Good afternoon. Illinois Appellate Court First District Court is now in session. The Sixth Division, the Honorable Justice Mary L. Mick for presiding, case number 21-0635, Marathon Petroleum Company v. Cook County. Good afternoon, counsel. As you probably both know, we afford each side 20 minutes. If the appellant would like to reserve any of that, please tell us how much you'd like to reserve when you introduce yourself. Before we start timing, I'm going to ask each of you to introduce yourselves and tell us who you represent, beginning with the appellant. Good afternoon, Your Honors. Assistant States Attorney Maurice Bacusa on behalf of the Cook County Department of Revenue. I would like to reserve five minutes, please, for both. Counsel? Good afternoon, Your Honors. David Mackimer, spelled M-A-C-H-E-M-E-R, here on behalf of Marathon Petroleum Company. Okay. And let me say to both of you, if you don't know this, we're pretty generous with time. We're not going to cut you off in the middle of a sentence, and if you need to finish your point, we're going to let you do that. So, beginning with Ms. Bacusa, whenever you're ready, please begin. Okay. May it please the court. Good afternoon, Your Honors. Again, I am Assistant States Attorney Maurice Bacusa, and I represent the Cook County Department of Revenue in this appeal. Marathon is liable for the full amount of the fuel tax assessments issued by the Cook County Department of Revenue, because the transactions involved that are at issue here constitute taxable sales under the gas tax ordinance. Marathon's transactions constitute sales based on their internal summary report in the record, which lists the name of the purchaser, the invoice date, the invoice number, the gallons involved in the transaction, the origin and destination names, whether or not the unregistered buying distributor, whether or not the buying distributor was registered or not, and whether it was a Cook County transaction. The Cook County Department of Revenue's determination was upheld by the Department of Administrative Hearings Administrative Law Judge. It was subsequently overturned by the Circuit Court of Cook County. In this appeal, the Cook County Department of Revenue asks that this court reverse the judgment of the Circuit Court and reinstate the Department of Administrative Hearings judgment. It's a dispute that no gas changed hands. Your Honor, I'm sorry, I missed the first part. Do I dispute that no gas changed hands? Yeah. I do not dispute that the gasoline did not flow between Marathon and the unregistered distributor. However, the definition of a sale under the ordinance classifies these transactions as sales. What part of that definition are you relying on? So the definition in the ordinance defines the term sale as any transfer of ownership in any means, pardon me, in any manner or by any means whatsoever. And it further provides in that definition section 74-471 that in every case where it shall be deemed to have been sold. Where's the transfer of ownership? The exchange of money and the fulfillment of the contract and the economic obligation under the contract between the buyer, which is an unregistered distributor, which is an extra part of the unregistered distributor part. What we're confused about or at least I am is where the transfer of ownership now. The transfer of ownership comes both of the experts in this record, both the county's expert and Marathon's expert testified that these were forward contracts and the unregistered distributor had an obligation to buy or sell a commodity at a future date. And on the performance date, the unregistered distributor fulfilled its economic, fulfilled the contract and its economic obligation there under by paying cash. So that is. The purchaser didn't pay the full amount of the contract price. And they're not being taxed on the full amount of the contract price. They're being taxed. But they paid basically to settle the obligation because they didn't want to fulfill the obligation. If I, for example, contract to buy your house and when it comes to the closing, I decide I don't want to buy your house, just like the purchaser here doesn't want to buy the gas. I'm in breach. They'd be in breach. And we settle the difference by an exchange of some cash to resolve the noncompliance. It's not a transfer of ownership or possession of the gasoline. It's a futures contract. It's an exchange. I agree that it is analogous to a breach of indicates that an exchange of money in for a transfer of ownership. And I think your honor is disagreeing that there's a transfer of ownership. However, I would point to the experts who said that it's a fulfillment of the contract. A fulfillment of the contract would say I bought it or I sold it, then the contract would be fulfilled with a transfer of custody or possession of the fuel. None of that takes place here. A fulfillment of the contract could also mean that it's in settlement of a failure to comply with the contract. That's what futures contracts do all the time. Yes, I understand, Judge, but your honor, I think it needs to be overlaid with the ordinance. And the internal, Marathon's internal summary report that lists the name of the purchaser, the invoice date, the invoice number, the gallons involved in this transaction, origin, destination names, and whether I understand Justice McPhus' point that you do understand registered and unregistered point. But the ALJ in this matter found that Marathon's cash settlement of forward contracts was taxable under the gas tax ordinance. And the reason that the ALJ found that is because there's a failure in this record to provide a complete chain of original contracts and corresponding cash settlement contracts or other cash settlement documentation in Marathon's book out transaction. So you're arguing, Ms. Piscuza, that they only demonstrated that in a couple of transactions where there may have been an actual situation of what Justice Pierce just mentioned, where they just simply did not actually ever take ownership because they just canceled the contract. But it seems that the administrative law judge was concerned that there were other situations in their books and records where it was clear that a purchase had been made, but there was no record of this end cash transaction that sort of bought out the contract, if you will. Because we all agree that if you're buying a home and you reach the contract or you can't come through on the contract and you settle with the owner that you don't take ownership of the property. And this is similar to that with the book out transaction that you're not taking ownership of the property. Very often though with book out transactions, what you see is that one company makes a sale to another company at some point in the future. But prior to that future date, the other company who has this contract to purchase the property involves another company in it such that the property does not change hands. It may even come back that it's going to be still held by Marathon. But the company who had the original contract receives a payment, which is the price difference between what they were going to purchase for and what they can now sell for. Are you suggesting that that's what's going on here? I'm suggesting that both of the witnesses, the experts here did not testify that the contracts were canceled. In fact, they both testified, both Marathon's expert and the county's expert testified that the exchange of cash was the satisfaction of the contract. So the contract was satisfied here. And so there is no canceling of the contract. And the cash, Marathon could not have accepted cash, but for the fact that they owned the gas and the unregistered distributor certainly had the right, I agree with your characterization that some, that the circumstances changed and the buying distributor, the unregistered distributor in this case, did not take the fuel, gasoline or diesel. However, they had the right to take that fuel and that's what they paid. They're satisfying the contract and that's an exchange, it is ownership under the ordinance. But Mr. Meckler is arguing in his brief though, that this is more of a situation where for whatever reason, the purchaser, the unregistered distributor could not take, many of these are examples where they could not take the gasoline. Maybe it's because they didn't have any place to store it. They didn't need it at that point, all sorts of reasons why they may not be able to take it. And what instead, he argues that what's happening there is they were just simply buying out the contract. That it was not a situation where they had ever taken ownership of the gasoline, which was still being held at Marathon's facilities. I, yes, I understand Marathon's argument. Again, I would just point to the definition in the 471 of the gasoline tax ordinance cited in both of our briefs that defines the sale as any transfer of ownership in any manner or by any means whatsoever. And further provides that in every case where gasoline or diesel fuel are otherwise disposed of, it shall be deemed to have been sold. So I understand Marathon's argument that these transactions nevertheless fall under the definition. Where's the transfer of ownership? This Marathon accepted cash for the contractual obligation of the unregistered distributor to buy the fuel, whether it's gas or diesel. So Marathon- Where's the transfer of ownership of the gas or diesel? Did ownership ever transfer from Marathon to the distributor? I missed the last question, your honor. I'm sorry. Did ownership ever transfer from Marathon to the distributor? Ownership of the gasoline? I think she's frozen. Yeah, Ms. Spokooza, you froze out. Give her a minute. You might have to repeat the question. Oh, actually, if she turns off her video, we'll be able to hear her. Usually it makes your signal stronger. Can I try doing that, turning off your video? She may not even be able to hear us. Yeah. Hold just a minute and see if she resumes. Darren, do you have a number for her that you can try reaching out to her? Your honor, this is Paul Fangman with the Cook County State's Attorney's Office. I'll go over to Marie's office and see if we can her connected back up. All right. We'll hold for a minute. Thank you very much. All right. All right. All right. All right. If she's not able to come back up, maybe he can just bring her to his office and let her argue from there. Right. I suggest that when we come back. Good idea. Have her walk over to his office. That's a good idea. Should have thought of it. Sorry. So Darren, watch and see if she's trying to come back in. I'm assuming you're doing that already. I think she's signing in under someone else. Hold on a second. Okay. Hello, your honors. I think Marie may come to my office to finish the argument from here. So if you can hold on just one second. Walker appears to suggest that. I'm sorry. Good afternoon, your honors. I apologize. My my Wi-Fi dropped. We can we can relate. We understand. So anyway, you have five minutes left of your opening argument. Okay. So the ALJ, the ALJ's decision is not clearly erroneous because Marathon's January 2006 through July of 2014 transactions constitute taxable sales under the ordinance. The ordinance. Before you go on to close, though, let's just come back to the question of the ownership. Where does the where does the ownership actually occur? At what point does the. The ownership becomes the owner. So Marathon is accepting money and the contract is being fulfilled. And both of the experts testified that the contract was not canceled. So. A breach involves a contract that is not performed. These economic obligations were performed. And the economic the economic obligation was for the distributor by, let's say, 10,000 gallons of fuel, correct? Correct. Okay. For a dollar a gallon. Correct. Okay. So if if that happened, the distributor would pay $10,000 to Marathon. And then they would get the gas. Correct. When these contracts are concluded, the distributor, I'm sure, did not pay Marathon $10,000 for no gas. They probably paid them $10,000. Right. You're correct, Your Honor. But they are being taxed. The fuel tax assessments are based on Marathon's own internal summary report, which lists the exact amount of the cash that was accepted from the unregistered distributor. So I'm not disagreeing. Okay, so so what would that be in my example? How much per contract would they be assessed? It's it's listed in the record on Marathon's own internal summary report. That's what the fuel tax assessment is based on. Okay, can you give me an example of what's listed in the record? I can direct you to pages in the internal summary report. I don't know if that's in my appendix. Okay. So I can provide that to the court. It is. That is what the fuel tax assessments were based on. And I think if I go to the beginning of our brief. But the assessment, the taxes is a pennies per gallon, correct? Six. Yes. So that's 74-472 and it's six cents per gallon. Correct. In no gallons, hold on, in no gallons transfer, only a settlement of the unfulfilled contract. It was a fulfilled contract. Pardon me? The contract was fulfilled as both of the expert witnesses testified. Both Marathon's witness, Dr. Arburn and Cook County's witness agreed that the contracts were performed. So they were not canceled. They were performed without the delivery receipt of any fuel by either party. But the definition under the ordinance, I agree. But the definition, they still meet the definition of a sale under the ordinance because it says any transfer of ownership in any manner by any whatsoever. And in every case where gasoline and diesel fuel are otherwise disposed of, it shall be deemed to have been sold. So it meets the definition, those payments to Marathon by unregistered distributors. So they are required and the ALJ made a determination that they are absolutely required to collect. The obligation is on the registered distributor so that the department can trace those gallons. And when they collect cash from an unregistered distributor, this whole problem would go away if those distributors had been registered under the ordinance, no tax would be owed. But Marathon failed to put not only the full evidence into the record of these transactions, the biotransactions, and did not prove that Cook County Department of Revenue put in their prima facie case. They also failed to put in evidence that these unregistered distributors were not doing business in Cook County. And I can direct you to that portion of the, that's in the record at 3469 in the ALJ's order. She found that Marathon did not meet its burden of proof of showing, they claimed that they were not doing business in Cook County, but there's no evidence in the record. And in fact, she pointed to the fact that one of the unregistered distributors, Phillips 66, did register with the county on July 1st of 2012. I'm sorry, none of that matters if there was no transfer of ownership under the ordinance, correct? It doesn't matter if they were in Cook County or not, correct? That was an alternative defense of Marathon. But if there was no transfer, there's no guess on whether it's Cook County or not, correct? So we are, the ALJ's position is that an ALJ, pardon me, the department's position that the ALJ agreed with was that an exchange of money took place for... I have two quick... Justice Walker referenced, and I think the chain booking out where you, A transfers to B, transfers to C, transfers to D. So there's a lot of middlemen who may never get gas, but A gets rid of gas and D collects gas at the end of the day. So there's an actual transfer down the line. Is there evidence that that's what's going on here? Is that what your position is? No, and that's what, so the court found in the appellate court in the, one second, hold on, the Ford decision found that Marathon testified to that. So both Mr. Freeman and the other witness testified that there were chain transactions going, but the record is devoid of the backup documentation. And this appellate court has held in the Ford decision that they must back up their testimony with books and records. So the ALJ properly found that the books and records were not entered into the record. That's the Ford Motor Company versus the Department of Revenue. It's a first district appellate court case. And the failure to present the appropriate books and records left Marathon with unsubstantiated oral testimony, which is not sufficient to overcome the department's prima facie case. And in reference to that, Marathon indicated in its brief in this court that all the records and backup were in the record and were available. You disagree with that? Marathon has introduced those into the record. So they introduced one, I believe it's They testified orally. This is what happens all the time. And they actually produced the books and records from one example of that. But they say underlying records were also available. They just didn't testify about them. You disagree with that? At least that's how I read the brief. They, well, they didn't testify and they didn't introduce them into the and they didn't put some before the department in any way. I'll clarify that with the opposing counsel, but there's some reference to them. They're not, they're not in the record. The department, the ALJ has to make a determination based on what's introduced into the records that the evidence that was testified to by Mr. Steiner and Mr. Freeman was not backed up by their books and records. Well, and that was a finding that the ALJ made finding that Marathon did not provide the complete chain of original contracts and related cash settlement contracts and documentation of its book out transactions. So that's where the ALJ had this one example, but the ALJ took the position that, well, we don't really know what happened. We see here from your books that there was a sale made, but we don't see this, so to speak, this, this, this settlement that Justice Pierce spoke of. That's not clear in the records that they actually settled this out. So it appears that there was actually a transaction that occurred based upon or her review, I'm sorry, of the records. Based on the internal summary report, which is Marathon's department. Right. And therefore they also found that those records didn't cooperate the testimony where Marathon is claiming that all these transactions were subsequently just settlements and that there were never, there were never any purchases being made of gasoline because of the purchase was made, but that was, I should say there was a contract to purchase, but there was no final purchase because they settled it some kind of way. That's, that's the argument that Marathon is making. Right. But they found that there was no evidence of these settlements. Correct. But all they can see is evidence of the contracts to sell. Correct. There's one, there is one complete chain and it's the Marathon to Sunoco. Sunoco was the only one. Sunoco was the only one. Correct. Yes. Yes. Yes. Yeah. Yes. Okay. Now also Marathon is saying that the administrative law judge put this unnecessary or in a proper burden on them to prove that, that things didn't happen. Well, who actually has the burden here? Where, where's the burden in terms of proving that there, that something is taxable or qualifies to be taxable or not qualified to be taxable? Who has the burden? So that's the, the Ford case. Once the department, the court, the ALJ found that the department went forward with its prima facie case and justified its fuel tax assessments. Then the, so the department met their burden of the prima facie case. Then under the Ford motor case, the taxpayer must come forward with its books and records to prove, to disprove that the tax is not due an owing. And that's what did not happen here. Because the court, the ALJ said, based on the one example of the Sunoco and Marathon transaction, they did not prove that these, first of all, that there were cash settlements, that they didn't actually take the gallons. She couldn't, and the title did not transfer. The that the title did not transfer. And she found that Marathon did not meet its burden of proving that. And that's where the ALJ seemed to have some difficulties that it's clear from the summary reports that Marathon presented that there were these transactions out there, but what was not clear is that there was some sort of cash settlement of these transactions such that there was no need for ownership to ever occur. That's where the ALJ struggled. And so therefore the ALJ found that Marathon had not presented the evidence that it needed to show that these were not taxable transactions. You are correct. Is that what's going on here? Yes. Yes. However, we just would go further to say that the cash, the payment of cash by an unregistered distributor shows the ownership transfer because Marathon is not accepting cash for, they owned the gas and the unregistered distributor had the right to take the gas. So they are paying for the, for the ownership of that fuel. And it seems that that's where the issue is. The issue is these unregistered distributors that engaged in these transactions subsequently. And I think we all agree that they never took possession of any gas, but your argument is that they did in fact take ownership of the gas. And then it seems as though that there's some, there's something in the record that may have even sold the gas because this is what happens sometimes in book out transactions that sold the gas to someone else. And that's someone else actually took possession of the gas who may have in fact been registered in Cook County, which therefore their situation is treated differently because they don't have to pay the tax because they'll pay the tax on the end when they subsequently, if they're registered in Cook County, there's no need to pay this middle tax here. It's only when you're not in Cook County, you have to pay the middle tax, correct? Exactly. But also each sale of the gasoline is a discrete transaction. That's in our, the constitutional section of our, of our brief. I think that's the word there case that says each sale of the gasoline is a discrete sale. So the sale to the unregistered distributor, and that's what the ALJ determined, he has to be, he has to be trapped by the department. And so the obligation is on the purchaser to pay, but the selling distributor, the registered distributor to report that and to pay the tax and to collect it. From the unregistered distributor, because the unregistered distributor won't have to pay the taxes later on because they, they, they, they won't sell the gas in Illinois, probably even because they're not, they're not licensed to sell gas in Illinois or registered, I should say, to sell gas in Cook County, not Illinois. But that's how the, yeah, that's how the department um, keeps track of the reason for the registration is so that the department can follow the flow of gasoline and make sure that it's taxed. Yes. Yeah. Because, yeah, because you're not, if you're registered, you don't, there's no concern with that transaction. If you purchase gas from another registered distributor, you're all good. It's only when an unregistered distributor starts purchasing gas in Cook County. And then subsequently, once they take that gas, that gas may never get taxed by Cook County. Yes. Unless the, unless the, unless Marathon in this case collects that tax when it sells to this unregistered distributor and that tax is six cents per gallon. Yes. I, your time is up. Uh, so, uh, you still have some time for rebuttal. Thank you. Good afternoon, your honors may please the court. So one of the things that I want to address right away is this question of burden that justice Walker just inquired about. Um, and here in this matter, we have a couple different burdens. And so I just want to start with this. First, we have the burden of taxation versus exemption. So if you look through the Cook County ordinance, there is an imposition clause that's found at section 74 for 72. That's what gives the ordinance the authority to impose this tax. If you look further in this ordinance, there's also situations that identify tax-free sales. You'll sometimes think of those as an exemption. There's charitable exemptions. Like when you go to buy something at retail, there could be an educational exemption, but why it's really critical to, to start with this burden question is the burden of taxation is always on the jurisdiction. There's plenty of case law says the burden of taxation is on the jurisdiction to show that this activity, this transaction falls within the ordinance and is subject to tax. Conversely, if someone is claiming, that's where they claim, Hey, we may be subject to tax, but there's something about our behavior. There's something about the characterization of our business that gives us an exemption. And in that case, that's when they have to prove conclusively that they fall outside of that tax. What Ms. Bacuso was just referencing with the four case that talks about an evidentiary burden and an administrative hearing. So I don't want to confuse those two concepts. First, we start with the burden of evidentiary hearing or a burden. First, the question is in assess the department's assessment assessment is prima facie correct. So long as they met a reasonableness standard in their audit, something that we'll talk about, we claim that they did not meet the reasonableness. If in fact this, this transaction is subject to tax burden one, if in fact they met the reasonableness of their audit, then the assessment's prima facie correct. Then it flips on the burden of the taxpayer to show by books and records that they have defeated this exemption. They have the ability to flip the burden back. So just kind of wanted to start with some, some burdens because there's a few burdens going on here. So why don't you take a minute now and tell us where we are then in terms of those burdens and which burdens were met and which were not. Yeah, absolutely. So the assessment was not prima facie correct. The audit did not meet the standard of reasonableness necessary to deem this, this assessment prima facie correct. And if we look through, so during the hearing, the well, for starters, before the hearing marathon sought to, to conduct discovery, we were prohibited from doing that. So the first time that marathon was able to speak to the auditors who conducted this assessment and reached the conclusion that these transactions were subject to tax was at the administrative hearing. It was at that time where questions were asked to the auditor, you know, did you understand what a book out transaction was? We have testimony. No, I looked to see what it was in a dictionary. There's another testimony. It says one of the auditors claimed marathon explained to us what a book out was, but I didn't bother to look at that. I saw money exchange. When I saw money exchange, that was a sale. The audit ignored the carrier column in the independent, in the internal summary report. We've heard a lot about this internal summary report, this internal summary report, and there's testimony to this identifies both transactions where fuel was physically transferred and delivered by means of trucks of carriers. If you look at that internal summary report and you look at those transactions where fuel was delivered versus those that are book transfer, you see a couple differences. One, you see the carrier identified. Secondly, you see an origin and a destination in that file with when transactions are physically delivered. In the origin and destination, you will see locations like Mount Prospect, Displanes. Those are areas where Marathon holds a terminal where they can actually transfer product. Now, let's compare those to the book transfers, okay? The book transfers in the carrier column, they just say book transfer. They don't identify a carrier that moved the product. For the origin and destination, they refer to Chicago. There's significant testimony. We cited this in our brief. It's layered throughout. There's testimony. Marathon holds no terminals in Chicago. They have no ability to transfer product in Chicago. They use that as a placeholder in their system. Chicago was just automatically generated. The auditors ignored those. The auditors also testified they didn't confirm whether inventory was changing. The auditors testified that they looked for cash. The auditor testified, the audit supervisor testified that the county has the ability to tax the intangible right to product, something that was never advanced in audit. Now, what also just came up, one of the questions posed was, were these documents in the record? They absolutely were in the record. There was a number of documents that was exchanged before this administrative hearing ever occurred. It happens in the audit. This is when the Department of Revenue went to Marathon to learn about these transactions and determine whether they were properly remitting tax. During that review, there was contracts. There was invoices. There was book transfer letters. There was corresponding book transfer invoices. There was internal summary reports exchanged. If you look at page 20 of our appellate brief, we identify where all these records are throughout the record. I will also tell you they're chopped up a little bit because the record was so voluminous that pieces just got moved all over the place. There's also a reference to, and this is found on 2720, this happened during the testimony, Marathon shared with the department prior to the hearing a number of documents that it may use at the hearing. The department stipulated as to those knowing that they had already been disclosed during the audit. We will be the first to admit during the audit, we only went through one transaction. And during that one transaction, we talked about a forward contract and what the set the price and pegged it to the Chicago market with delivery to occur on a future date. As part of that string, we introduced the physical deal sheet. That's what gets triggered when the parties elect to financially settle the contract. That's the letter that's generated. We talked about the book transfer letter. That also recognizes intent for the parties to financially settle. Then lastly, there's the corresponding book transfer invoices. These are the respective demands for payment where payment was made. Now, critically in what is completely absent from the ALJ's opinion is that after this expert went, or I'm sorry, after this fact witness went through this string of documents, he testified this string of documents doesn't change between book transfer to book transfer. They're all the same. It's the same standard contract that Marathon uses when it enters into contracts to buy and sell fuel. And these corresponding documents are identical. Then what was critical, he testified that this string of documents and documents introduced were representative of every single book transfer transaction that Marathon entered into in this matter, or even globally. This is just, these are the sets of documents. So let me ask you a question then. So we have here where the ALJ has assessed more than $10 million in taxes due from Marathon because of transactions with unregistered distributors. And you're saying that all now, and that's just $10 million in taxes at six cents per gallon. So we can only imagine how voluminous all these contracts would have to be to get to $10 million in taxes at six cents a gallon. What is going on that Marathon is engaging in all of these book transactions with unregistered distributors? Can you explain that for us just so we can understand it a little bit better here? Yeah. So if you think about the registration clause, and we talked to the auditors about this at the hearing, the registration clause only, and this is per the tax, if you are essentially receiving product in the county or moving it out of the county. So some of these unregistered distributors are financial firms. They are not in the business of moving product. They're in the business of entering into future and forward contracts. But I understand that, but when someone enters into a futures contract, it's usually designed to take advantage of changes in prices. And that's how people make money. They're making money because of the change in the price. So these unregistered distributors, usually the case is, and I'm not going to say what the case is here, but very often just in the general world, when people engage in those contracts, they're making money by selling at a price different from the So these unregistered distributors, in this case, are they actually selling the product to someone else such that the difference in the amount that they're actually paying is sort of that involves some sort of income, some kind of way to the unregistered distributor, because they're actually becoming the, they have this contract pursuant to the contract. Anyone who has a contract has a right to sell what they've contracted to purchase. And they're now selling it somewhere else such that there's no need for them to take possession because they're actually giving the product or they're selling the product to another company. And that other company will ultimately take possession. And they're taking possession at a higher price than what this first distributor was able to purchase. Yeah. So to answer that, I could see that happening. That's not what was happening. So what was happening in these transactions, Marathon has schedulers. So they have this forward contract where they have an intent to sell motor fuel to someone at a future date. Let's use the example of September 15. They enter into a contract with someone to purchase fuel, they're going to take delivery on December 1. Okay, so we get to the last week in November. And now these schedules are saying, okay, where do I need to line up this fuel? Oh, looks like I owe purchaser B, you know, 1000 gallons of product, and I have to deliver it on December 1. And what happens is these schedulers are also looking at their obligations. Do we have any obligations to purchase product? Because even though Marathon is a large producer of oil, it's not in every region that they're focused and concentrated on certain geographic markets. And they don't have plentiful product in every single geographic market throughout the United States. And Matt Freeman, our fact witness, talked through this. So what happens is when we get to the last week in November, when we know we have a delivery occurring on December 1, we say, oh, do we have any reciprocating offsetting purchases that party B owes us. And so we look at our purchases from party B, we see if there's offsetting obligations, and we say, well, it doesn't make any sense for me to give you 100 gallons when you owe me 100 gallons. But oh, wait, we contracted at different prices. So someone's going to come out a little bit ahead in that situation, someone's going to come out a little bit below. We've never dodged the fact that there's money exchange in this. But the issue with the county's position is the ordinance doesn't tax money. Right. And I will let you finish. But in some cases, these are unregistered distributors that are receiving money. Because they went to position where they had a better price. And that's where the state is having difficulty. That's where the ALJ had difficulty. When I say the state, I'm referring to Mr. Cruz's argument that she's making. This is where she's having difficulty. This is where the ALJ had difficulty. This is where the county had difficulty when they issued the tax. And it's my understanding that they're only taxing the amount that was actually received. They're not taxing the entire contract. No, that's so they are. So the way these contracts are written and drafted, the contract has to be performed. The contract permits the parties to book out. But Matt Freeman's testimony was clear, these contracts are not canceled. Right? Let me stop you for a second. Let me say that. Let me stop you for one second. Let me say that my original understanding was that they weren't taxing the entire contract. Ms. Vizcuza just argued that they're only taxing that amount of cash that was received. So let's can you clarify that for us? Yeah, I think both are right, because they are taxing the cash received, but the cash received is the entire contract amount. Right. It's not a set. It's not that, you know, I agree. Well, you just agree. Well, that wasn't you that agree. But what this is, Pierce just asked the question about whether or not it was some sort of a settlement. If it's a settlement, it's not going to be the entire contract amount. So you're saying it is the entire contract amount. That's correct. Yes, it's being received by the it's being received in some cases by the unregistered or received by marathon because they're selling to an unregistered distributor. Yeah, so I want to be clear, the contracts aren't breached here, they are financially settled. And so oftentimes, and we'll even see these deals happening between two registered dealers, like there's transactions where, you know, and so that wouldn't implicate the tax. But so just let me cut you off. And I just wanna make sure I understand as we go along. So the example that we gave earlier about the selling of a home where there's a breach, and then you simply settle that doesn't even apply to this situation, correct? Not what we're talking about in this hearing, right? Because we're talking about a situation where there's no breach of the contract. This is a situation where they just there's just a price differential. And there's no need. And I mentioned this earlier, there's no need for me to receive this gasoline. First of all, I have no place to store it. But I'm old gasoline somewhere else. I owe someone else gasoline over here. So that gasoline may just somewhere else where I owe gasoline, correct? Almost 100% correct. I would just say in the in the example you just gave, and what was assessed here, gasoline never went anywhere. These were all bookouts that were between marathon and another party or in your earlier event where there could be a chain of a few parties. Marathon was the first person and the last person in the chain, even if there was someone in the middle. It came back around to marathon. So in all examples, because and that's because marathon is so and basically they're the Goliath. Correct. Okay. So but still, there's transactions occur. Correct. Those contracts are to some extent being consummated, right? They're not being breached. They're not being canceled. They're being consummated by transferring this by all these transfers. Correct. Well, the performance of the contracts happens by the financial settlement because there's offsetting obligations. So it just rather than formal performance in the in the manner of physical delivery. Yeah, there is no physical delivery with here. No physical delivery, but there is but there is a completion of these contracts. And the completion boils down to no need to send this because you owe me this over here. And I owe you this. And so it's just it's even right. And in other cases, there may be dollar amounts being transferred. Correct. Correct. So again, the issue becomes though, when you bring unregistered distributors into this equation, that's where the problem comes in. Because if if marathon is not going to collect that tax from these unregistered distributors, that tax never gets paid in some cases, because unregistered distributor has no obligation to cook count. I would say that's incorrect, only from the standpoint that there's no gasoline that's ultimately flowing through to a retail station to be right, but there's money, there's money, there's ownership of that gasoline bill. And there's in pursuant to the ownership of that gasoline, money is being transferred. And the ownership is going somewhere else. As soon as we say, well, you owe me this, I owe you that there's ownership being transferred every time you make that change. Now, this is your gas. No, now it's my gas. Oh, but no, that's your gas over here. This is my gas over here. Well, so therefore, I mean, that's what's happening here. There's no ownership because in the in the original gallons that there's no ownership changing because in the original gallons that marathon has entered into a contract to sell to someone else, that ownership of those gallons, it never changes because... Right, but listen for a second. If marathon sells gasoline to me, and I subsequently, because I owe gasoline somewhere else to have that gasoline transferred to someone else, then once I make that transfer, I can only make that transfer if I'm an owner. And you just told us that these transfers are happening all the time, where one person owes something over here, someone owes something over there, and they're just kind of make a call in the evening in some cases. Yeah, but in that example where someone owes an obligation to marathon over there, they also have it. They have their hundred gallons, marathon has its hundred gallons. So marathon's hundred gallons never changes to that other party, just like that other party's gallons never changes. And we understand that, but what the state is arguing right now though, is that the ownership is actually transferring. Even though no gasoline is transferring, the ownership is being transferred through these agreements that's happening based upon these contracts that are out there. That the gasoline is now getting transferred to go to somewhere else, even though it doesn't go anywhere, but it's because these people may owe marathon this to owe marathon that, so there's no need for marathon to send them the gas because they owe marathon a million dollars. So that million dollars of gas doesn't have to be sent to them. Am I not understanding it correctly? Correct me where I'm wrong. Yeah, you're understanding the transaction correctly on the concept of ownership, and we argue this in our appellate brief, is that ownership, you have to have a right to convey something. You have to have a right to enjoy that. No one ever gets to enjoy those hundred gallons that marathon has. No, because marathon never transfers anything because they don't have to. Because once they- Guys, we're out of time. Yeah, but let me finish my point, though, please. The unregistered distributor then says, oh, well, actually, I'm transferring this $10 million of gas over to this other company, and then once it gets to the other company, the other company doesn't have to send anything to marathon. Marathon doesn't have to send gas to the other company because the other company already sits with marathon. Am I not correct? We disagree because it never gets transferred. That's where- I know, that's what I just said, so maybe you're not following me. I'll say it again. The unregistered distributor has this contract to purchase $10 million of gasoline or diesel from marathon, we'll say diesel, and then they say, okay, well, we're going to transfer this right to receive that over to ABC Gasoline Company, and ABC Gasoline Company owes marathon $10 million, so marathon doesn't need to transfer the gasoline to ABC Gasoline Company because they already owe marathon $10 million, so they can just keep the gasoline themselves, and that seems to be what's happening. Am I correct? No, that's not what the testimony in the record- the other piece is only that first transaction was assessed, so these second and third and fourth transactions, if they in fact occurred, marathon does not- Mr. McNamara, if you understand this properly, only the first transaction would be taxed because the only time there's a tax in these situations is when there's unregistered distributor. If it's a registered distributor, there's no need to do that tax because that registered distributor will pay that tax down the road eventually when it gets to a consumer. Am I correct? Yeah, that's accurate. Okay, I understand what's going on. I just need you to follow me. I know exactly what's going on here, but I'm done. Council, did you have any other final points because your time is well out? No, Your Honor, we have no further points. Okay, thank you. Council, briefly in rebuttal? Briefly, thank you, Your Honors. It is by self-forward contract. Council acknowledged that both of the marathon witnesses testified that all the other examples were the same. Those were not introduced into the record. But they are available in the record just because they were produced in discovery or they're nowhere in the appellate record? They were not admitted into the record. Correct. They were not admitted in the underlying proceeding by the ALJ. They're not admitted. And that's why my citation of the Ford Motor case is on point because the first district appellate court held that the taxpayer must once the prima facie case is made and the ALJ found that the department did make a prima facie case by showing that Marathon's internal summary report listed all of these gallons and all of these sales and all of the cash received. The last point I want to make is... I have one question before your final point. Are we correct that the tax is on the gallons of gas, not the differential price? The tax that you assessed was on the gallons of gas. Yes. It's six cents per gallon. That's under 74-472. So the gallons appear... That's how the department made its prima facie case. The tax assessments are based on the records that were provided by Marathon during the audit. And there's just a disagreement as to whether there's a sale here. The department's position is there is a sale because the cash transactions qualify as a and the unregistered distributors had a right to take the gas. And the only way for the department to follow these gallons of gas is to require under the ordinance that the registered distributor collect from the purchaser. And then I just wanted to point out that the ALJ also, in addition to finding that the Marathon didn't meet its evidentiary burden of proof to show that these contracts, that the title did not transfer or ownership did not transfer, they did not meet the burden of proving. They just testified that these unregistered distributors were not doing business in Cook County. There's nothing in the record. The ALJ points to documents intended to be relied on a trial that are not introduced. The only unregistered party identified was Sunoco. And then the ALJ went on to note that Phillips 66 did register. So they were doing business in Cook County. And they're one of the unregistered. There are seven other companies listed at 3469 in the record. CHS Inc, Glencore Limited, Noble Americas, PBF Holdings, Phillips 66, Quick Trip Corp, Sun Refining and Marketing. Marathon put nothing in the record. So the ALJ correctly found on both counts that Marathon did not prove that ownership did not transfer. These transactions are sales. And as such, Marathon was absolutely required to collect the tax under the ordinance. And because they were sales to unregistered distributors. And for those reasons, we would ask that in this appeal, the court reverse the decision of the circuit court and reinstate the decision of the Department of Administrative Hearings. Thank you. Thank you both. This is a very interesting and pretty complicated case. You both did an excellent job and we'll take this matter under advisement and we will hear from you shortly. Thank you.